**CANONSBURG SUPPLY AND EQUIP-
MENT COMPANY, INC.**

v.

**JOHN DEERE INDUSTRIAL EQUIP-
MENT COMPANY.**

**Civ. A. No. 73-308.**

United States District Court,
W. D. Pennsylvania.

Jan. 30, 1975.

---

Thomas J. Shorall, Pittsburgh, Pa., for plaintiff.

John H. Morgan, Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

This proceeding, which was removed from the Court of Common Pleas of Allegheny County, Pennsylvania, and for which jurisdiction exists on the basis of diversity of citizenship, has been filed by plaintiff who seeks recovery for an alleged breach of contract. The Court has afforded the parties a full and complete trial.

The facts may be briefly stated. Plaintiff is a retail dealer in agricultural, lawn and garden, and industrial machinery and equipment. Plaintiff also deals in tires and sells gasoline, oil, and related merchandise on its premises. On the basis of various Dealer Agreements first entered into in 1957, plaintiff was authorized to sell equipment and merchandise manufactured by defendant's predecessor, John Deere Plow Company of Baltimore, Inc. At various times, agreements were entered for the sale by plaintiff of three distinct lines of John Deere merchandise, including agricultural, consumer, and industrial products. The Dealer Agreements were renewed annually, and plaintiff still retains the right to sell, distribute, and service John Deere agricultural and consumer products. However, the Industrial Equipment Dealer Agreement was cancelled as of October 31, 1971, and not renewed thereafter.

To fully comprehend the factual background involved, it is well to note that the present defendant deals exclusively with industrial equipment bearing the John Deere trademark and has done so since July 1, 1967. Completely separate corporate entities are responsible for the marketing of other John Deere products, and their relationship with plaintiff continues.

Beginning in 1967, Dealer Agreements for industrial products from defendant went into effect on November 1 of each year, with equipment lines divided into three categories: construction, utility, and forestry equipment. During the contract year beginning November 1, 1967, and ending October 31, 1968, plaintiff held both a Construction and Utility Agreement with defendant. During the following three contract years—1968–69, 1969–70, and 1970–71—plaintiff held Utility and Forestry Agreements with defendant. Very simply stated, defendant chose not to renew any Dealer Agreements which it had with plaintiff.

Although considerable evidence was introduced by plaintiff to establish the sales record it had in defendant's products, and the similarity between defendant's industrial line and those of the other John Deere companies, the Court is satisfied that defendant acted properly in not renewing the Dealer Agreements. The contracts between the parties provide for cancellation and, in addition, specified requirements for appointment as a dealer. After numerous visits to plaintiff's dealership, defendant's territorial manager, R. W. DeLeon, Jr., reported various deficiencies, including the lack of an individual designated to act as an industrial salesman, the failure of plaintiff to send employees to John Deere service schools, the failure to stock a full line of defendant's industrial equipment, and the regular absence of dealer manager Anthony Badia, who was employed

full time at a supermarket. Defendant made known to plaintiff at various times the factors in plaintiff's performance as a dealer which were not satisfactory. Thus, John Deere Industrial Equipment Company established on the record a course of conduct by plaintiff with which the defendant was dissatisfied and the frequent attempts to have plaintiff correct the situation.

Under the circumstances, the Court is satisfied that no breach of contract resulted when defendant did not renew plaintiff's dealership agreement. In effect, the contract required defendant's personal satisfaction; and, simply stated, this was not attained. In commenting on the validity of such contracts, it has been stated that:

"Such contracts are not strangers to the law of Pennsylvania and have been considered by us on numerous previous occasions. We have consistently held that where a contract provides for performance by one party to the satisfaction of the other, 'the test of adequate performance is not whether the person for whom the service was rendered *ought* to be satisfied, but whether he *is* satisfied, there being, however, this limitation, that any dissatisfaction on his part must be genuine and not prompted by caprice or bad faith.'" (Emphasis in original). Jenkins Towel Service v. Tidewater Oil Co., 422 Pa. 601, 606, 223 A.2d 84, 86 (1966).

In the considered judgment of the Court, there has been no breach of contract where a dealer has failed to fulfill a reasonable obligation or agreement made in connection with the dealership, and thus defendant has no liability here for refusing to renew its Dealer Agreements with plaintiff.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing Opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.